# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VICKI GONZALEZ, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. ELH-18-2935 |
| SPUNK INDUSTRIES, INC., et al., | * | |
| *Defendants*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATIONS

Plaintiff Vicki Gonzalez filed suit against Defendants Spunk Industries, Inc. ("SII") and Jason C. Jean (collectively "Defendants"), asserting six counts including trademark infringement, cyberpiracy, and unfair or deceptive trade practices. ECF 1. This Report and Recommendations addresses Plaintiff's Motion for Entry of Award of Damages ("motion for default judgment"), ECF 25, and Defendant Jean's two near-identical Petitions to Open Default Judgment, ECF 27, 29.[1] I have also considered Plaintiff's opposition to Defendant Jean's Petitions. ECF 30. Judge Hollander referred this case to me to review the pending filings and to make recommendations, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. ECF 31, 32. No hearing is deemed necessary. Loc. R. 105.6 (D. Md. 2018). For the reasons discussed below, I respectfully recommend that Plaintiff's motion for default judgment be denied for lack of personal jurisdiction, that Plaintiff be ordered to provide additional information about her attorneys' billing records and process server costs, and that Defendant Jean's Petitions be granted and the entry of default be lifted as to

---

[1] The only material difference between the two filings, other than the date, is the inclusion of Defendant Jean's current address in ECF 29. I recommend terminating ECF 27 as a duplicate filing, but will refer to both documents herein as "the Petitions."

Defendant Jean, although I recommend that alternative sanctions in the form of certain costs be imposed. I further recommend that the Court set a schedule for Defendant Jean to respond to the Complaint, to be followed by limited jurisdictional discovery to ascertain whether this Court can exercise personal jurisdiction over Defendants.

## I. BACKGROUND

Plaintiff owns and operates an adult lifestyle membership club known as the Tabu Social Club, located in Catonsville, Maryland. ECF 1, ¶ 18. The Tabu Social Club has an associated adult lifestyle website, "tabulife.com." *Id.* Plaintiff has valid, enforceable trademark registrations with the U.S. Patent and Trademark Office for the marks "Tabu Social Club," "Tabulife," and "Tabutravel." *Id.* ¶ 23. Plaintiff alleges that Defendant Jean, a former member of the Tabu Social Club, knew of Plaintiff's rights in the trademarks, but intentionally created similar names for his websites, with the intent to profit from consumer confusion in Maryland and elsewhere. *Id.* ¶¶ 41-42. Essentially, the Complaint alleges that Defendants sold and offered to sell adult lifestyle entertainment services using four websites: "tabulifestyle.com," "tabulivestyle.com," "thetabu.com," and "thetabutruthordare.com." *Id.* ¶ 24.

Plaintiff filed her Complaint in this case on September 21, 2018. ECF 1. In relevant part, the Complaint alleges, "On information and belief, Defendant Spunk Industries Inc is a Pennsylvania corporation with a principle [sic] place of business at 709 N 2nd St Fl 2, Harrisburg, PA, 17102-3211." *Id.* ¶ 10. The Complaint further alleges, "On information and belief, Defendant Jason C. Jean is the owner of Spunk Industries Inc and may be contacted at the address and contact information listed above for Spunk Industries Inc." *Id.* ¶ 11.

On multiple occasions, using two different process servers, Plaintiff unsuccessfully attempted to serve Defendants with the Complaint and Summons at 709 North 2nd Street, Floor

2, Harrisburg, Pennsylvania. ECF 6-1 Ex. A, B. One of the process servers eventually received a voice message from Defendant Jean, stating that an attorney, Johnna Kopecky, Esq., would accept service on behalf of both Defendants. ECF 6-1 Ex. A. A process server also attempted to serve Defendant Jean at his workplace, American Anvil Tattoo, but the telephone is answered by an answering machine, and during an in-person visit, the receptionist would not allow the process server to see Defendant Jean without an appointment. ECF 6-1 Ex. C. The receptionist again advised that the documents should be served on Ms. Kopecky. *Id.* The process server delivered the Summons and Complaint to Ms. Kopecky's office, but Ms. Kopecky called Plaintiff's counsel and advised that she could not accept service, although she could engage in settlement discussions. *Id.* Ex. D, E. Plaintiff sought and obtained the Court's permission for alternative service of process, and served Defendants by mailing the Summons and Complaint to 709 North Second Street, Floor 2, Harrisburg, Pennsylvania, and by delivering a copy to the front desk at American Anvil Tattoo. ECF 9, 14. Service by those methods was effected on February 27, 2019. ECF 14. Defendants did not respond.

On May 13, 2019, Plaintiff filed a Motion for Clerk's Entry of Default against both Defendants. ECF 18. The Clerk entered the default on May 16, 2019, and notified Defendants of its entry by mail to 702 North 2nd Street, Floor 2, Harrisburg, Pennsylvania. ECF 21. On May 31, 2019, Defendant Jean filed a *pro se* "Motion to Vacate," ECF 26-1, but the Court rejected the filing as defective, because it lacked a certificate of service. ECF 26. Defendant Jean then filed his two Petitions on June 18, 2019, and June 21, 2019, respectively. ECF 27, 29. In his Petitions, Defendant Jean asserts that the 709 N. 2nd Street address, used for service of the Complaint and Summons and for mailing of the notice of default, is "a defunked [sic] business address." *See, e.g.,* ECF 27, ¶ 2. Defendant Jean acknowledged that he received the notice of default via forwarded

3

mail. *Id.* He provided an updated mailing address, also in Pennsylvania, in his second Petition. ECF 29.

## II. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Upon a party's application for a default judgment, Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter a default judgment against a defendant, after the Clerk has entered default for failing to appear. In assessing whether default judgment is appropriate, the Court accepts all well-pleaded factual allegations in the Complaint as true. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780-81 (4th Cir. 2001). However, the Court must still ensure that the undisputed factual allegations prove each of the elements necessary to establish each defendant's liability. *Id.*; *see also* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. 2010 supp.) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

This Court's analysis, then, begins with the jurisdictional allegations in Plaintiff's Complaint. Although subject matter jurisdiction in this case is evident because many of Plaintiff's claims present federal questions, personal jurisdiction is far less clear. Personal jurisdiction is a defense which may be waived under some circumstances. *See* Fed. R. Civ. P. 12(h)(1) (defects in personal jurisdiction are waived unless timely raised by a party). The Fourth Circuit has not determined whether a district court should assess the existence of personal jurisdiction as a prerequisite to entering default judgment.[2] Several other Courts of Appeals have held that such an

---

[2] In an unpublished, per curiam opinion in 2011, the Fourth Circuit reviewed a case in which the plaintiff, who had been crowned Miss West Virginia, filed a civil conspiracy lawsuit against fifty-nine defendants "located throughout the United States and the world" for marketing a sex video purporting to feature her likeness. *Williams v. Advertising Sex, LLC,* 410 F. App'x 578, 579-80 (4th Cir. 2011). Twenty-eight of the defendants failed to appear in court or to respond to the complaint, following proper service. *Id.* at 580. Plaintiff moved for a default judgment, but the district court instead dismissed the twenty-eight defendants

inquiry is either required or permissible. *See, e.g., Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 214 (2d Cir. 2010) ("[W]e agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."); *Mwani v. bin Laden,* 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant.");

---

for lack of personal jurisdiction. *Id.* The Fourth Circuit provided the following brief reasoning for its decision to reverse:

> Despite this court's best efforts at contacting the parties, the twenty-eight Default Defendants also have failed to enter an appearance before this court, *i.e.,* they have become the "Default Appellees." Consequently, we have no briefs before us to support the district court's conclusion that it lacked personal jurisdiction over them, and there are no attorneys to address this matter at oral argument. Accordingly, we decline to address the issue of whether a district court must satisfy itself, *sua sponte*, that it has personal jurisdiction before entering a default judgment. Rather, we reverse the district court's order denying Williams's motion to reconsider the issue, and instruct the court to enter default judgments against the Default Defendants as had been sought by Williams.

*Id.* In the accompanying footnote, the Fourth Circuit stated:

> We note that the Default Defendants are commercial enterprises and persons involved in the distribution of adult Internet content. These relatively sophisticated litigants pursued a litigation strategy that carried the real possibility of having a default judgment entered against them. Nonetheless, the Default Defendants failed to enter an appearance before the district court or this court at their own peril.

*Id.* n.2. District courts in the Fourth Circuit have continued to consider personal jurisdiction prior to entry of a default judgment, even after *Williams. See, e.g., Glaser v. Hagen,* Civ. No. 1:14-cv-01726 (LMB/IDD), 2015 WL 10012993 at *2 n.1, (E.D. Va. Oct. 29, 2015) (noting that "Fourth Circuit case law appears to be unsettled regarding whether a court should raise the issue of personal jurisdiction sua sponte," but ultimately considering the issue of personal jurisdiction, to avoid entering a void default judgment); *Winzeler v. Sanchez*, Civ. No. 2:13cv612, 2015 WL 12645001 at *3 (E.D. Va. July 28, 2015) (citing *Williams,* but finding that "the court must have both subject matter and personal jurisdiction over a defaulting party."). Moreover, this case is distinguishable from *Williams* in several respects. First, Defendants here are a defunct corporate entity and a *pro se* litigant, who cannot be described as "relatively sophisticated litigants." Second, although Defendant Jean appears to have taken some actions to evade service, his conduct does not seem to constitute "a litigation strategy." Unlike the Default Defendants in *Williams,* who continued to disregard the pending court actions throughout the district court proceedings and even on appeal, Defendant Jean took relatively quick action to try to vacate the default once it had been granted and he received the notice forwarded from his prior address. ECF 26, 27, 29. Finally, because Defendant Jean has now become active in defending this litigation, the parties will have the opportunity to conduct the necessary jurisdictional discovery to ascertain whether, in fact, personal jurisdiction exists over both of the named Defendants.

*Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy,* 242 F.3d 322, 324 (5th Cir. 2001) ("We previously have determined that a judgment entered without personal jurisdiction is void. It should therefore be apparent that a district court has the duty to assure that it has the power to enter a valid default judgment."); *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999) ("In most circumstances, a defect in personal jurisdiction is a defense that may be asserted or waived by a party. Nevertheless, when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction."); *Williams v. Life Savings & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986) (per curiam) ("We hold that a district court may not inquire into its personal jurisdiction and dismiss a case *sua sponte* except when entering a default judgment. . . . In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment.").

The Fourth Circuit has clearly determined that "any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void." *Koehler v. Dodwell,* 152 F.3d 304, 306-07 (4th Cir. 1998). Thus, even if the inquiry is not required at this stage, it appears prudent to determine, prior to entry of a default judgment, whether this Court can exercise personal jurisdiction over Defendants SII and Jean.

To exercise personal jurisdiction over a non-resident defendant, a court must determine that (1) the exercise of jurisdiction is authorized under the state's long-arm statute, pursuant to Federal Rule of Civil Procedure 4(k)(1)(A); and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals. *See Carbone v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. RDB-15-1963, 2016 WL

4158354, at *5 (D. Md. Aug. 5, 2016); *Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 135-36 (D. Md. 1981), aff'd, 758 F.2d 649 (4th Cir. 1985); *see also Mylan Labs., Inc. v. Azko, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 178 (1938)). Moreover, courts must address both prongs of the personal jurisdiction analysis, despite Maryland courts consistently holding that "the state's long-arm statute is coextensive with the limits of personal jurisdiction set out by the due process clause of the Constitution." *Bond v. Messerman*, 391 Md. 706, 721, 895 A.2d 990, 999 (2006); *see Carefirst of Md.*, 334 F.3d at 396; *CSR, Ltd. v. Taylor*, 411 Md. 457, 472, 984 A.2d 492, 501 (2009) (noting that the personal jurisdiction analysis "entails dual considerations").

Under the first prong, the plaintiff must identify a provision in the Maryland long-arm statute that authorizes jurisdiction. *Ottenheimer Publishers, Inc. v. Playmore, Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001). Under the second prong, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milleken v. Meyer*, 311 U.S. 457, 463 (1940)). This "minimum contacts" analysis depends on the number and relationship of a defendant's contacts to the forum state, and whether the present cause of action stems from the defendant's alleged acts or omissions in the forum state. *Id.* at 316-19.

Finally, a court may exercise two types of personal jurisdiction, "general" or "specific." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017). "General" jurisdiction is a fairly limited concept, since it only arises where "the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [defendant] on causes of action arising from dealings entirely distinct from those

7

activities." *Int'l Shoe*, 326 U.S. at 318. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.*" Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). In the context of a corporation, the paradigm bases for general jurisdiction are "the place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The *Daimler* court clarified that while those paradigms are not necessarily the only bases for general jurisdiction, it would be "unacceptably grasping" to approve the exercise of general jurisdiction wherever a corporation, "engages in a substantial, continuous, and systematic course of business." *Id.* at 137-38 (declining to find general jurisdiction lies in every state in which a corporate defendant has "sizable" sales). In this case, there is no basis for general personal jurisdiction. The domicile alleged for Defendant Jean, and the primary place of business alleged for Defendant SII, are both in Pennsylvania.

"Specific" jurisdiction arises when there is an "affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919; *Carefirst of Md.,* 334 F.3d at 397. To assess specific jurisdiction, the Fourth Circuit considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002)).

Plaintiff asserts the following bases for personal jurisdiction:

On information and belief, this Court has personal jurisdiction over Defendants because Defendants have sold or offered to sell services to consumers located in Maryland. On information and belief, this Court has personal jurisdiction over

> Defendants because they have contracted to supply services to consumers in Maryland and regularly do business or solicit business in Maryland.

ECF 1, ¶ 16. Those conclusory allegations roughly mirror some of the subsections of Maryland's long-arm statute. *See* Maryland Courts and Judicial Proceedings Article ("MCJP") § 6-103(b)(1) ("Transacts any business or performs any character of work or service within the state"), § 6-103(b)(2) ("Contracts to supply goods, food, services, or manufactured products in the State"); § 6-103(b)(4) ("Regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.")

Even viewed in the light most favorable to Plaintiff, however, her allegations do not constitute "facts" on which this Court can rely to base personal jurisdiction. As this Court has found, "An allegation made 'on information and belief' does 'not serve as a reliable foundation upon which to predicate a final judgment.'" *Balt. Line Handling Co. v. Brophy,* 771 F. Supp. 2d 531, 543 (D. Md. 2011) (quoting *Oceanic Trading Corp. v. Vessel Diana,* 423 F.2d 1, 4-5 (2d Cir. 1970)); *see also Educ. Credit Mgmt. Corp. v. Optimum Welding,* 285 F.R.D. 371, 374 (D. Md. 2012) (denying request for default judgment where the only allegations supporting one element of the claim were made "upon information and belief"); *Malina v. Balt. Gas & Elec. Co.,* 18 F. Supp. 2d 596, 604 n.4 (D. Md. 1998) (finding affidavits based upon information and belief insufficient to be considered for summary judgment).

The remainder of the Complaint, to the extent Maryland is mentioned at all, contains only similar conclusory allegations, many of which are also made "upon information and belief." *See* ECF 1, ¶¶ 12, 24, 42, 56, 106. The Complaint is devoid of factual allegations to establish that Defendants have done business with, or even interacted with, any actual or prospective Maryland clients or customers. Moreover, the Complaint contains no information as to whether any

customers did, or even could, conduct any business transactions over any or all of the allegedly infringing websites. Under Maryland's long-arm statute, the lynchpin of a plaintiff's assertion of specific jurisdiction is that the plaintiff's claims arise out of acts performed in Maryland. *See* MCJP § 6-103(a). The mere fact that Defendants may have maintained websites that were accessible in Maryland, and everywhere else, would not suffice to establish constitutionally viable personal jurisdiction. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir. 2002) ("Thus, adopting and adapting the *Zippo* model, we conclude that a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that the activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.") (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997)); *Amer. Ass'n of Blood Banks v. Boston Paternity, LLC,* Civil No. DKC-2008-2046, 2009 WL 2366175, at *9 (D. Md. July 28, 2009) ("Maintenance of a website that allegedly infringes on another's trademark 'does not establish minimum contacts sufficient for personal jurisdiction, in the absence of . . . evidence that any resident of the forum state has ever contracted with or even contacted the company.'") (quoting *Am. Info. Corp. v. Am. Infometrics, Inc.,* 139 F. Supp. 2d 696, 702 (D. Md. 2001)). Without any factual allegation of any act performed in Maryland by either Defendant, they cannot be subject to personal jurisdiction, as Plaintiff has not alleged even minimum contacts with the state.

That said, Plaintiff's use of "upon information and belief" to plead her claims is not inappropriate in this matter, because evidence of the relevant information regarding Defendants' business transactions is entirely within Defendants' control. *See Malibu Media, LLC v. Doe,* No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014) (noting the importance of

differentiating "between a case in which pleading 'upon information and belief' is used as an inadequate substitute for providing detail as to why the element is present in an action . . . [and the] proper use of 'upon information and belief,' where a plaintiff does not have personal knowledge of the facts being asserted." (citations and internal quotation marks omitted)). Where, as here, information "is particularly within defendants' knowledge and control," the use of "upon information and belief" is warranted. *Kajoshaj v. New York City Dept. of Educ.*, 543 F. App'x 11, 16 (2d Cir. 2013) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)).

If this Court accepts this recommendation to deny Plaintiff's requested default judgment, a schedule should be set for Defendant Jean to file a response to the Complaint. Based on the developments in the case thus far, it appears likely that only Defendant Jean, who can represent himself *pro se*, will participate in the litigation.[3] Nonetheless, Defendant Jean's appearance will afford Plaintiff an opportunity to conduct some discovery, which will either establish or refute the existence of jurisdiction. Where personal jurisdiction is at issue, the trial court has discretion to order jurisdictional discovery. *See Carefirst of Md.*, 334 F.3d at 402; *Estate of Bank v. Swiss Valley Farms Co.*, 286 F. Supp. 514, 520-21 (D. Md. 2003). Here, details regarding the business dealings of Defendants Jean and SII would certainly assist the Court in assessing jurisdiction, considering that only Defendants have access to this information and that Plaintiff's allegations do not appear to be baseless. *See Estate of Bank*, 286 F. Supp. at 521. Thus, I recommend that following Defendant Jean's formal appearance in the litigation, the Court set a prompt schedule for limited discovery on the issue of personal jurisdiction, to the extent Plaintiff wishes to continue pursuing her claims against Defendants in this district.[4] After limited discovery, Plaintiff should

---

[3] Corporate entities, including SII, must be represented by counsel. *See* Loc. R. 101.1(a).

[4] It is possible, of course, that Defendant Jean will waive the issue of personal jurisdiction by filing an answer to the Complaint. Limited jurisdictional discovery would still be required, however, to allow

be able to amend her Complaint to include sufficient factual allegations to support a finding of personal jurisdiction, or should be on notice that she must file her claims in Pennsylvania.

### III. DEFENDANT JEAN'S PETITIONS TO SET ASIDE DEFAULT[5]

Federal Rule of Civil Procedure 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." As the Fourth Circuit has noted, "an extensive line of decisions has held that [Rule 55(c)] must be 'liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951, 954 (4th Cir. 1987) (quoting *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)). The Fourth Circuit has also stated that, when compared to the standard under Rule 60(b), the "good cause" standard in Rule 55(c) "is more forgiving of defaulting parties because it does not implicate any interest in finality." *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.,* 616 F.3d 413, 420 (4th Cir. 2010); *see also Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."). Because the Clerk has entered default against Defendant Jean, but a default judgment has not been issued, Defendant Jean's motion to vacate is correctly considered pursuant to the more lenient standard of Rule 55(c), rather than Rule 60(b).

---

Plaintiff to garner facts to assess whether she can amend her Complaint to obtain a default judgment against SII. If the relationship between Defendant Jean and SII is as alleged by Plaintiff, then obtaining jurisdictional discovery from Defendant Jean should permit Plaintiff to determine whether she can maintain a cause of action against SII in Maryland. In the meantime, the Clerk's entry of default will remain in place as to SII, because SII has taken no action to vacate it.

[5] Defendant Jean captioned his Petitions as seeking to vacate a "default judgment." ECF 27, 29. Procedurally, though, only the Clerk's entry of default has been entered, and the motion for default judgment, as recommended above, would be denied.

Six factors are relevant to the analysis of this motion. The Court considers "whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic." *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204-05 (4th Cir. 2006).

The first factor is whether Defendant Jean has a meritorious defense. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988); *see also United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[A]ll that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). "The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default." *Augusta Fiberglass,* 843 F.2d at 812.

Defendant Jean, a *pro se* litigant, did not present evidence in an admissible format, such as affidavits or declarations, to prove the merits of his defense. Nevertheless, this factor necessarily weighs in his favor in light of the procedural posture of this case. As discussed above, this Court cannot grant default judgment for Plaintiff, because Plaintiff cannot establish personal jurisdiction in this Court on the present record. If the default entered by the Clerk were to remain in place, the case would exist in a permanent procedural limbo where Defendants have been defaulted, but Plaintiff is unable to obtain substantive relief in the form of a judgment. Vacating the Clerk's entry of default will allow jurisdictional discovery, in order to determine whether Plaintiff can proceed to adjudicate her claims in this Court, or needs to refile her case in another jurisdiction.

Additionally, Defendant Jean does "attest" to certain facts in his filings which may support a defense on the merits. *See, e.g.*, ECF 27 at 2-3. Because Defendant Jean is *pro se*, his filings must be "liberally construed." *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994) (citing *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). A finding that it is premature, without additional information, to ascertain the likelihood of success comports with the principle enunciated in *Augusta Fiberglass*, where the Fourth Circuit made clear that cases with some possibility of a defendant's prevailing at trial should proceed to adjudication on the merits. *See* 843 F.2d at 812.

The second factor, "reasonable promptness," also weighs in favor of Defendant Jean. Defendant Jean attempted to file his motion to vacate just fourteen days after the Clerk's entry of default, which is similar to times found to have been "reasonably prompt" in other Fourth Circuit cases. *See Colleton Preparatory Acad., Inc.,* 616 F.3d at 418 (nine days); *Tazco, Inc. v. Dir., Office of Workers Comp. Program, U.S. Dept. of Labor,* 895 F.2d 949, 950 (4th Cir. 1990) (eight days). Further, the evidence suggests that the notice of default, like the Summons and Complaint, were sent to an address no longer used regularly by Defendants, making the fourteen-day delay even more reasonable.

The third factor, the personal responsibility of the defaulting party, weighs in favor of Plaintiff. Plaintiff has documented her extensive efforts to serve Defendants, and the apparent efforts by Defendant Jean to evade service. *See* ECF 6. Although it appears that several of the efforts at service were unsuccessful due to Plaintiff's use of an invalid address, when a process server appeared at the tattoo establishment where Defendant Jean worked, he was prevented from effecting service by the receptionist. ECF 6-1 Ex. C. Moreover, the record reflects that Defendant Jean eventually obtained a copy of the Complaint (whether via traditional service or otherwise), but did not respond formally until the Clerk entered default.

14

The fourth factor, prejudice, weighs clearly in Defendant Jean's favor. Plaintiff has not established that the brief delay in this case prejudiced, in any way, her ability to present her case at trial. The fact that she will not prevail by way of default and will actually have to present her case on the merits does not constitute prejudice. *See Augusta Fiberglass*, 843 F.2d at 812 ("As to prejudice, we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory."). Plaintiff cites the expense she has incurred to procure Defendant Jean's response as "prejudice," ECF 25, but she will incur no additional prejudice if the default is lifted and the case is adjudicated on the merits.

The fifth factor is history of dilatory action, which weighs in favor of the Plaintiff. There can be little doubt, based on the facts proffered to the Court in the Motion for Alternative Service of Process, that Defendant Jean intentionally evaded service of process at his workplace, and that the evasion caused a delay in adjudication of this proceeding. *See* ECF 6. Defendant Jean essentially took no action to involve himself in the litigation until the default was entered, other than his unsuccessful discussions with counsel about trying to resolve the case.

The final factor is consideration of sanctions less onerous than default. In light of the heavy presumption in favor of permitting the case to proceed to adjudication on the merits, and the several factors above which weigh in favor of Defendant Jean, the most reasonable alternative sanction would be to reimburse Plaintiff for certain of the costs she incurred in attempting to effect service. However, the alternative sanctions requested by Plaintiff, consisting of what appears to be all of the costs and expenses incurred in the litigation to date, are far too broad. *See* ECF 25-1 (requesting $11,205.00 in attorneys' fees, including those incurred for the fact investigation and drafting the Complaint). Specifically, I do not recommend reimbursing Plaintiff for those fees related to (1) preparing the Complaint, which happened before Defendant Jean's evasive actions; (2) opposing

Defendant Jean's Petition to Set Aside Entry of Default, since Plaintiff's opposition was largely unsuccessful; (3) preparing or filing the motion for default judgment, since that motion also was unsuccessful; or (4) preparing or filing the motion for Clerk's entry of default, since that motion would have had to be filed to obtain the still-pending default against Defendant SII. The affidavit submitted by Plaintiff's attorney, ECF 25-1, does not attach time records or provide particularized time entries to permit this Court to decide which entries should or should not be compensated. Essentially, however, I recommend that Plaintiff be required to submit more precise billing records, and that only the fees for preparing and filing the Motion for Alternative Service of Process be awarded.

Similarly, as to the process server expenses, I do not recommend reimbursing Plaintiff for the multiple efforts made by the process servers to serve Defendants at 709 North 2nd Street, Floor 2, Harrisburg, Pennsylvania, because that appears to be an invalid address for a now-defunct business. I recommend that Plaintiff be ordered to reimburse (1) the costs of the efforts to serve Defendant Jean on November 19, 2018, at American Anvil Tattoo; and (2) the costs of serving the complaint on Johnna Kopecky of Shagin Law Group on November 20, 2018, since Defendant Jean had incorrectly advised the process servers that Ms. Kopecky would accept service on behalf of Defendants. According to the affidavit from Plaintiff's attorney, all of the costs paid to the process servers totaled $760.00. However, the vast majority of the service attempts were made at the invalid address. I recommend that Plaintiff be required to submit a supplemental declaration or affidavit clarifying which process server costs are attributable to the service attempt at American Anvil Tattoo on November 19, 2018, and the attempt to serve Ms. Kopecky on November 20, 2018. Once the supplemental records have been received, with a more precise request for fees and costs limited in accordance with this recommendation, I recommend that Defendant Jean be

afforded an opportunity to file a brief explaining why an award of the amounts for those two service attempts is not an appropriate alternative sanction to the Clerk's entry of default.

## IV. CONCLUSION

For the reasons set forth above, I recommend that:

1. the Court DENY Plaintiff's Motion for Entry of Award of Damages for Permanent Injunction, ECF 25;

2. the Court require Plaintiff to submit supplemental information regarding her attorneys' fees and process service costs, and allow Defendant Jean to object to an alternative award of such fees and costs as described above. After considering the merits of any such objection, I recommend that the Court GRANT Defendant Jean's Petition to Open Default Judgment, ECF 29; deny the near-identical petition, ECF 27, as duplicative; and award an alternative sanction in an appropriate amount of attorneys' fees and process service costs against Defendant Jean; and

3. the Court order Defendant Jean to respond to the Complaint by an appropriate deadline, to be followed by limited jurisdictional discovery before a standard scheduling order is set.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: September 13, 2019 /s/
Stephanie A. Gallagher
United States Magistrate Judge